[Civ. No. 9621.   First Appellate District, Division Two.—January 8, 1935.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation), Respondent, v. GERTRUDE HOOVER, Appellant.

Owen D. Richardson and John L. McNab for Appellant.

E. M. Rea and Maurice J. Rankin for Respondent.

SPENCE, J. — This action was originally brought by Henry Hoover, now deceased, to set aside a certain deed executed by said deceased under date of September 10, 1931. After the death of said deceased on December 27, 1931, the executor was substituted as plaintiff herein.   The cause was tried upon the issues of undue influence and incompetency as alleged in the amended complaint and the trial court found in favor of plaintiff on both of said issues.   Judgment was

entered in favor of plaintiff upon said findings and from said judgment defendant appeals.

In the opening brief appellant urges but two points for consideration on this appeal. The first point is that the evidence is insufficient to sustain the finding of undue influence and the second point is that the evidence is insufficient to sustain the finding of incompetency. After a review of the record before us, we believe that there was ample evidence to sustain both of said findings, but as the judgment should be affirmed in the event that the evidence was sufficient to sustain either of said findings (*LaMar* v. *Bank of America,* 218 Cal. 252 [22 Pac. (2d) 689]), we shall discuss only the testimony relating to the issue of incompetency.

At the time of the signing of the deed on September 10, 1931, and at the time of the making of an alteration therein on September 11, 1931, Henry Hoover was eighty-two years of age and was confined to his bed in the San Jose Hospital suffering from cancer of the bladder. He had been in said hospital continuously since July 27, 1931, and had suffered intensely from his malady. From the time of his admission there, morphine and amytol compound, in constantly increasing doses, had been continuously administered to him to relieve his pain. On September 8, 1931, he underwent a major operation which was so serious that, with the resulting shock to his system, he had not been expected to live. This condition of shock continued until after the signing and alteration of the deed, during which time he suffered the most excruciating pain except when completely stupefied by opiates. During that period he was given 1¼ grains of morphine on at least two occasions each day and was also given 6 grains of amytol compound on at least two occasions each day. The testimony showed that the average dose of these opiates as given to adults is ¼ grain of morphine and 3 grains of amytol, but the large doses were deemed necessary for the deceased because of the extreme pain which he was suffering. The result of these large doses was to cause him to become dull and stupefied, his respiration became short and the pupils of his eyes became contracted. The deed was signed on September 10th, at about 6 o'clock in the evening, and the alteration was made therein shortly

after 7 o'clock on the evening of the following day. The nurse testified that he was "very stupefied" at the time of the signing of the deed. On that day he had 6 grains of amytol at 11 A. M.; 1¼ grains of morphine at 11:30 A. M., 6 grains of amytol at 5 P. M., and 1¼ grains of morphine at 6 P. M. The witness Bradley testified that during the time he was there with the defendant for the purpose of obtaining Mr. Hoover's signature, "Mr. Hoover laid there in bed, half of the time with his eyes closed, moaning and groaning . . . evidently suffering a great deal." This witness testified that he read the deed to Mr. Hoover, but that the latter made no comment; "apparently he did not realize that I had read it". Shortly before the alteration was made on the evening of September 11th, Mr. Hoover had been subjected to the painful operation of catheterization and at 6:30 P. M. 1¼ grains of morphine had been administered. Despite the use of the opiates he was suffering greatly at the time. He lay with his mouth open, his tongue out, and was constantly groaning. Dr. Van Dalsen, who was the attending physician, saw Mr. Hoover at least twice a day during the entire time that he was in the hospital. He testified regarding the condition of Mr. Hoover on September 10th and 11th and gave his opinion that Mr. Hoover "was incompetent at that time to sign legal documents" or to understand or to transact any business.

The deed in question purported to convey to appellant all the real property owned by deceased, which real property was described therein, and "also all other property both real and personal" owned by deceased subject to a life estate reserved by deceased. The property of the deceased consisted of extensive real estate holdings and a large sum of money in bank. On September 16, 1931, being but a few days after the signing of said deed, appellant verified a petition which was filed on September 18, 1931, whereby she sought to have the deceased adjudged an incompetent and to have herself appointed as his guardian. On September 28, 1931, she also brought an action in the superior court seeking to enjoin deceased from disbursing any of the money in bank. The deceased, after having recovered from the shock of the operation of September 8th, and after his condition had become somewhat improved, filed this action on

October 21, 1931, to set aside said deed. He subsequently died on December 27, 1931, but prior to his death, his deposition was taken and was thereafter used upon the trial. It is apparent from a reading of said deposition that the deceased was quite weak at the time of the taking thereof. With respect to the time of the signing of the deed, he testified, "I didn't know a thing, I didn't know a deed from a newspaper." He also stated, "I remember signing some paper, I don't know . . . I had been operated on two days before and was under the narcotic all the time . . . I didn't know what I was doing, I was so full of narcotic and pain I didn't know nothing, I would have signed anything." He further testified that he did not know what was in the deed when he signed it; that he remembered that they told him "it was only for the forty-one acres on the Senter Road"; that "they said it was a deed, I didn't know what it was".

The foregoing is but a brief summary of some of the evidence offered on the issue of incompetency. There was conflicting evidence introduced by appellant and there were some inconsistencies in the testimony introduced on behalf of respondent. But considering all of the evidence introduced, we are satisfied that the question of whether the deceased was competent or incompetent was a question of fact to be determined by the trial court, and that the testimony of the deceased, the doctor, the nurse and the witness Bradley amply sustains the finding that the deceased was incompetent at the time. In some respects the testimony upon which said finding was based is similar to the evidence which was held sufficient in *LaMar* v. *Bank of America, supra*.

In the reply brief appellant makes the further contention that "the defendant by the uncontradicted evidence is entitled to a judgment on her affirmative defense adjudging her to be the owner of parcels 2 and 4 as the same are described in the grant under attack". Respondent has filed a supplemental brief in reply to this point. Appellant's claim is based on certain deeds which were alleged to have been signed by the deceased in the year 1917. These deeds were not produced at the trial, it being appellant's theory that her father had destroyed them prior to his death. We believe it a sufficient answer to appellant's contention to

state that while there was evidence to show that certain deeds had been signed by the deceased in 1917, the evidence of appellant as well as that of the deceased showed that deceased did not intend that said deeds should take effect immediately, but intended that they should be effective, if at all, only at the time of his death. Appellant testified: "A. We were to take them, put them on record at his death. Q. And not before? A. No, we didn't have them." Appellant further testified that the deeds were retained by the deceased and were last seen by her in his possession. This evidence justified the conclusion that the alleged deeds were never delivered so as to presently pass the title and that the signing and retention thereof merely showed the testamentary desires of the deceased at the time. (*Donahue* v. *Sweeney*, 171 Cal. 388 [153 Pac. 708]; 9 Cal. Jur., p. 187.) Under these circumstances, appellant was not entitled to a judgment upon the theory that the lost or destroyed deeds constituted valid conveyances divesting the deceased of title to the property described therein.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 7, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 28, 1935.